Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Clarendon National Insurance Company was the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage is to be determined by a Form 22.
5. The issues to be determined are:
a. Did plaintiff suffer an injury by accident?
b. Does plaintiff suffer from any disability?
 c. Are the symptoms suffered by the plaintiff proximately caused by the alleged injury by accident?
d. What, if any, benefits is plaintiff entitled?
6. The parties stipulated medical reports into the record:
a. Dr. William Crutchfield
b. Dr. C. Thomas Gualtieri
c. Albemarle Hospital
d. Dr. Randolph Sherman
e. Dr. Isabelle Richmond
f. Dr. Kimkya C. Asika
g. Coastal Rehabilitation, Inc.
h. Dr. Grant Skidmore
i. Norfolk General Hospital
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the injury, plaintiff was a fifty-year-old female, who was employed as a maid with defendant-employer. Plaintiff's primary duties included cleaning vacation rental condominiums after checkouts.
2. Plaintiff is a high school graduate and since 1971 worked as a maid in several jobs. She moved from New York to North Carolina in 1994. Between 1994 and 1997 plaintiff was self-employed as a maid.
3. In April 1997, plaintiff attended a job fair held by defendant-employer and began working for defendant-employer. She was hired to work from Memorial Day through Labor Day, two days per week, with pay of $88.00 per day.
4. On 22 June 1997, while working for employer, plaintiff was cleaning a shower when a hand-held nozzle fell and struck her on the head.
5. The first medical note of treatment after the injury was three weeks later on 16 July 1997 when plaintiff saw Dr. Randolph Sherman. Dr. Sherman diagnosed a soft tissue scalp injury, prescribed medication and ordered a CT scan. The CT scan did not reveal any abnormalities.
6. On 13 August 1997, plaintiff saw Dr. William Crutchfield, with whom she had been treating since at least 1995 for a long-standing history of headaches. At this visit, Dr. Crutchfield was concerned that plaintiff's headaches might be a side effect to the numerous medications that she was taking, and he recommended an evaluation by her primary care physician.
7. Prior to the injury of 22 June 1997, Dr. Crutchfield was of the opinion that plaintiff's headaches were vascular or muscular or the result of a temporomandibular joint malfunction.
8. On 15 August 1997, plaintiff returned to Dr. Sherman. At that time Dr. Sherman was of the opinion that a traumatic event would not cause temporal arteritis, and he could not find any physical cause for plaintiff's complaints. He recommended that plaintiff return to Dr. Isabelle Richmond, a neurologist who had performed surgery on plaintiff in January 1997.
9. On 2 September 1997, Dr. Richmond saw plaintiff and reassured her that she did not have a significant brain or head injury. Dr. Richmond recommended that plaintiff undergo nerve block therapy.
10. Plaintiff returned to Dr. Sherman on 17 September 1997. Dr. Sherman informed plaintiff that her injury should have resolved much earlier and that he would no longer write prescriptions for narcotic pain medications for her. Dr. Sherman released plaintiff from his care as of that date. After Dr. Sherman released plaintiff, there are no further medical records indicating plaintiff was medically treated for headaches.
11. On 15 November 1999, plaintiff sought treatment from Dr. Grant Skidmore, a neurosurgeon. At that time plaintiff reported neck and right arm pain, but she did not report any problems with headaches. Dr. Skidmore ordered an MRI of the cervical spine, and the results were within normal limits.
12. In December 1999, Dr. Skidmore performed surgery to remove a mass on the median nerve of plaintiff's right arm that was unrelated to the injury on 22 June 1997.
13. On 29 August 2000, Dr. C. Thomas Gualtieri performed an independent medical evaluation of plaintiff. Dr. Gualtieri's opinion was that a trauma would affect temporal arteritis for only a short period of time.
14. At the time of plaintiff's 22 June 1997 injury, she was also working as a maid for Dr. Crutchfield. After her injury, plaintiff continued to work for Dr. Crutchfield. Between September 1997, when Dr. Sherman released plaintiff from his care, through August 1998, when she went to work for a different employer, plaintiff continued to work for Dr. Crutchfield, but did not seek any other employment. Plaintiff was never written out of work by any of her treating physicians. Any loss of plaintiff's wage earning capacity after 22 June 1997 was not causally related to the injury by accident.
15. After 17 September 1997, plaintiff has not required any additional medical treatment and has no permanent partial impairment to any part of her body or any important internal organ as a result of the injury by accident.
16. The parties did not take any medical depositions in this case. The medical records do not causally relate plaintiff's condition after 17 September 1997 to the compensable injury by accident.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on 22 June 1997. N.C. GEN. STAT. § 97-2(6).
2. Plaintiff has failed to prove that any disability that she sustained after 22 June 1997 is causally related to the injury by accident. N.C. GEN. STAT. § 97-2(9); Click v. Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980).
3. Plaintiff is not entitled to any compensation for any permanent partial impairment to any part of her body or important internal organ. N.C. GEN. STAT. § 97-31.
4. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury only through 17 September 1997. N.C. GEN. STAT. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay medical expenses incurred by plaintiff on or before 17 September 1997 when bills for the same have been approved in accordance with the provisions of the Act.
2. Defendants shall pay the costs due this Commission.
 ***********
This the ___ day of July 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________ BERNADINE BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER